1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

16

DIANA L. STEWART,

              Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

             Defendant.

CASE NO. 12-cv-05934 BHS

REPORT AND
RECOMMENDATION ON
PLAINTIFFS COMPLAINT

Noting Date: January 24, 2014

17

18

19

20

21

22

23

24

     This matter has been referred to United States Magistrate Judge J. Richard

Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261,

271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 15, 16, 17).

     After considering and reviewing the record, the Court finds that the ALJ did not

evaluate properly plaintiffs alleged mental impairments. He erroneously found that

plaintiff was not diagnosed with any mental impairment until January, 2010, when in

fact, plaintiff was diagnosed with at least one mental impairment multiple times by multiple doctors before January, 2010. In addition, the ALJ failed to document application of the special technique required for evaluating mental impairments. For these reasons, and based on the relevant record, the Court concludes that this matter should be reversed and remanded for further proceedings.

BACKGROUND

Plaintiff, DIANA L. STEWART, was born in 1953 and was 52 years old on the alleged date of disability onset of January 1, 2006 (*see* Tr. 90, 137, 142, 225, 234). Plaintiff completed her Business Office Technology Degree in August 2008 (Tr. 143). Plaintiff has worked as a census taker for the Department of Commerce, a field interviewer for the Department of Agriculture, in the warehouse for Sees Candy and a temporary position through an agency (Tr. 253). For about 6 ½ years before attending college, plaintiff was a caregiver for two children who had behavior and emotional problems (Tr. 151).

Plaintiff has at least the severe impairments of "sleep apnea, mild coronary artery disease, and right shoulder adhesive capsulitis (20 CFR 404.1520(c))" (Tr. 92). Plaintiff also claims that she has a severe mental impairment of PTSD and major depressive disorder, among other alleged severe impairments (*see* ECF No. 15, Page 10). The ALJ provided his initial impression at plaintiff's administrative hearing as follows:

> [W]hat I get from this case is we have a lady who has a history of abuse; both as a child and as an adult, and that she has some residuals from that abuse, which has caused her some problems. It looks like she does have attempts at college and work study, and I'd like to know what that was, and how well it went. She's got some sleep apnea problems.

(Tr. 140).

Plaintiff subsequently directed the ALJ's attention to her depression, which plaintiff alleged had been "severe and ongoing since her onset date" (Tr. 141).

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act in October, 2007 (*see* Tr. 90, 225-32). The application was denied initially and following reconsideration (Tr. 90, 173-75, 179-83). Plaintiff's requested hearing was held before Administrative Law Judge Thomas Robinson ("the ALJ") on May 5, 2010 (*see* Tr. 135-170). On June 11, 2010, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 87-102).

On August 21, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 41-43). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in October, 2012 (*see* ECF Nos. 1, 4). Defendant filed the sealed administrative record regarding this matter ("Tr.") on February 12, 2013 (*see* ECF Nos. 10, 11).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ properly evaluated the medical evidence; (2) Whether or not the ALJ properly evaluated plaintiff's testimony; (3) Whether or not the ALJ properly evaluated the lay evidence; (4) Whether or not the ALJ properly assessed plaintiff's residual

functional capacity; (5) Whether or not the ALJ erred in basing his step five finding on the Medical-Vocational Guidelines and by failing to take testimony from a vocational expert; and (6) Whether or not the new evidence that was submitted to the Appeals Council shows that the ALJ's decision was not supported by substantial evidence and/or was based on legal error (*see* ECF No. 15, pp.1-2).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled pursuant to the Act only if claimant's impairment(s) are of such severity that claimant is unable to do previous work, and cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

In addition, the Court must independently determine whether or not "the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence." *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985)). According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (*citing Chenery Corp, supra*, 332 U.S. at 196). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is

irrelevant to the ultimate disability conclusion when considering the record as a whole.

*Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*,

556 U.S. 396, 407 (2009).

DISCUSSION

(1) **Whether or not the ALJ properly evaluated the medical evidence**.

Among other things, plaintiff challenges the ALJ's step two finding that she did not

suffer from the severe mental impairments of depression and PTSD (among other alleged

severe impairments). Defendant contends that the ALJ's step two findings were proper,

and alternatively argues that at most, the ALJ committed harmless error.

Step-two of the administration's evaluation process requires the ALJ to determine

if the claimant "has a medically severe impairment or combination of impairments."

*Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§

404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). The Administrative Law Judge "must

consider the combined effect of all of the claimant's impairments on her ability to

function, without regard to whether [or not] each alone was sufficiently severe." *Smolen,*

*supra*, 80 F.3d at 1290 (citations omitted).

An impairment is "not severe" if it does not "significantly limit" the ability to

conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work

activities are "abilities and aptitudes necessary to do most jobs," including, for example,

"walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;

capacities for seeing, hearing and speaking; understanding, carrying out, and

remembering simple instructions; use of judgment; responding appropriately to

supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen, supra*, 80 F.3d at 1290 (*quoting* Social Security Ruling "SSR" 85-28) (*citing Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)).

According to Social Security Ruling 96-3b, "[a] determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairments(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing* SSR 96-7p). If a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." *Bowen, supra*, 482 U.S. at 146.

The ALJ failed to find that plaintiff suffered from any severe mental impairment and specifically failed to find that plaintiff's depression or her post traumatic stress disorder ("PTSD") were severe impairments, because he found that "there is no mental health diagnosis by an acceptable medical source in the record until the claimant began formal mental health treatment in January 2010 at Cascade Mental Health" (Tr. 95 (*citing*

Exhibits 17F; 18F; 20 C.F.R. §§ 404.1513(a), 416.913(a); Social Security Ruling, SSR 06-3p)).

However, this very important finding of fact by the ALJ is not supported by substantial evidence in the record. Although the ALJ relied on a finding that there was not a "mental health diagnosis by an acceptable medical source in the record until" 2010, over six years prior to that, on May 20, 2003, Dr. James Yoon, D.O., indicated that he "suspect[ed] some level of depression" (*see* Tr. 351). In September, 2005, Dr. Jong-Wook Ban, M.D., similarly assessed plaintiff with "at least moderate symptoms of depression" and noted that plaintiff "burst into tears" (*see* Tr. 406). Furthermore, subsequently, Dr. Ban continued to list depression as one of plaintiff's assessed diagnoses in November, 2005 (*see* Tr. 403).

As observation of a plaintiff's symptoms, affect, behavior and mood by a medical doctor following examination, with a resultant diagnosis of a mental impairment, is a diagnosis of a medically determinable impairment by an acceptable medical source: the ALJ's finding to the contrary is not supported by substantial evidence in the record.

After a referral from Dr. Ban, and following her own independent examination, Dr. Katherine M. Hogg, M.D., on November 1, 2005, indicated in a follow-up letter that plaintiff "undoubtedly has disrupted sleep related to fibromyalgia, chronic pain and a mood disorder" (Tr. 383; *see also* Tr. 382 ("mood disorder is also quite likely")).

After plaintiff's alleged onset date of January 1, 2006, plaintiff's mental health therapist, Jeanette Revay, ARNP, on April 10, 2006, conducted an intake examination, diagnosed plaintiff with major depressive disorder and prescribed her Zoloft (*see* Tr.

513). Following her mental status examination ("MSE") of plaintiff, Ms. Revay observed no eye contact by plaintiff and assessed plaintiff with "low mood" (Tr. 512).

Subsequently, on June 19, 2006, Ms. Revay again conducted a MSE, again observed no eye contact from plaintiff and again assessed plaintiff with low mood (Tr. 511); and, similarly, on July 5, 2006, she again conducted a MSE, and again observed no eye contact and assessed low mood (*see* Tr. 509). At this July 5, 2006 appointment, Ms. Revay added Lamictal to plaintiff's prescription of Zoloft (*see id.*). On July 17, 2006, Ms. Revay again conducted a MSE, again made the identical observation and assessment and also noted her observation that plaintiff was "low and tearful today" (*see* Tr. 508; *see also* Tr. 490, 496, 538, 539-40).

Also during the relevant period of time, Dr. Ban assessed on June 29, 2006 that plaintiff's medication was not optimally effective at treating the symptoms of plaintiff's depression (*see* Tr. 395). And again in August, 2006, Dr. Ban assessed that plaintiff was suffering from depression, among other impairments (*see* Tr. 392). On August 25, 2006, Dr. Jeffrey C. Christiansen, M.D., referenced plaintiff's diagnosed anxiety/depression (*see* Tr. 379). Dr. Ban's diagnosis of depression was repeated in October, 2006 (*see* Tr. 391).

Dr. Ban is an acceptable medical source, treating plaintiff and examined her on multiple occasions. His diagnosis is repeated multiple times throughout the record, including during the exact one year period of time at issue here. Dr. Ban specifically refers plaintiff to Ms. Revay for follow up, and the Court already has discussed some results of Ms. Revay's multiple mental status examinations. In finding that plaintiff did

not suffer from a medically-determinable impairment of depression, the ALJ rejected the express diagnoses of multiple acceptable medical sources.

When an ALJ seeks to discredit a medical opinion, he must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (*quoting Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981))); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)).

When concluding that plaintiff did not suffer from a severe mental impairment, not only did the ALJ reject without more than a passing comment, multiple diagnoses of depression from multiple examining doctors (acceptable medical sources) during the relevant period of time, he also rejected the conclusion of plaintiff's mental health

therapist, who apparently was responsible for determining plaintiff's psychotropic medication regimen.

Here, the ALJ did not adequately explain his differing conclusions from the medical doctors trained in clinical observation and diagnosis. Although it is true that the record may suggest that the most thorough and regular mental status examinations were provided to plaintiff by her mental health therapist, as opposed to having been conducted by Dr. Ban, who directed plaintiff to her mental health therapist, Dr. Ban nevertheless is an acceptable medical source who examined plaintiff; diagnosed plaintiff on multiple occasions during her exact period of insured status with depression; and noted that she was going to Ms. Revay for follow up, who was prescribing plaintiff multiple psychotropic medications.

The Court also notes that although "only 'acceptable medical sources' can [provide] medical opinions [and] only 'acceptable medical sources' can be considered treating sources," *see* SSR 06-03p, 2006 SSR LEXIS 5 at *3-*4 (internal citations omitted); nevertheless, evidence from "other medical" sources, that is, lay evidence, can demonstrate "the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id.* at *4. The Social Security Administration has recognized that with "the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." *Id.* at *8. Therefore, according to the Social Security Administration, opinions from other medical sources, "who are not

technically deemed 'acceptable medical sources' under our rules, are important and should

be evaluated on key issues such as impairment severity and functional effects." *Id.*

Relevant factors when determining the weight to be given to another medical

source include:

> How long the source has known and how frequently the source has seen
> the individual; How consistent the opinion is with other evidence; The
> degree to which the source present relevant evidence to support an
> opinion; How well the source explains the opinion; Whether [or not] the
> source has a specialty or area of expertise related to the individuals'
> impairments(s), and Any other factors that tend to support or refute the
> opinion.

2006 SSR LEXIS 5 at *11. In addition, the fact "that a medical opinion is from an

'acceptable medical source' is a factor that may justify giving that opinion greater weight

than an opinion from a medical source who is not an 'acceptable medical source' because .

. . 'acceptable medical sources' 'are the most qualified health care professionals." *Id.* at

*12. However, "depending on the particular facts in a case, and after applying the factors

for weighing opinion evidence, an opinion from a medical source who is not an

'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,'

including the medical opinion of a treating source." *Id.* at *12-*13.

In the year subsequent to the end of plaintiff's insured status (December 31, 2006)

(Tr. 90, 92), Dr. Christiansen on March 30, 2007 again referenced plaintiff's diagnosed

mood disorder and concluded that "[i]t is very possible that some of her fatigue and

sleepiness persist due to her mood disorder" (Tr. 376).

The Court notes that this last conclusion from an acceptable medical source about

fatigue complications from a mood disorder, and Dr. Ban's opinion that plaintiff's

depression symptoms were not controlled adequately, demonstrate in the context of this record that plaintiff suffered from more than a minimal effect on her ability to conduct work activities as a result of her mental impairment of depression (*see* Tr. 376, Tr. 395). *See Smolen, supra*, 80 F.3d at 1290 ("An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work'") (*quoting* Social Security Ruling "SSR" 85-28) (*citing Yuckert, supra*, 841 F.2d at 306).

Therefore, the Court concludes that the ALJ's finding that there was no mental health diagnosis from an acceptable medical source in the record until January, 2010 is erroneous and not based on substantial evidence in the record as a whole. Frankly, defendant's argument that plaintiff's depression was not diagnosed "by an acceptable medical source" is close to a misstatement of the record (see ECF No 16, page 3). In light of the foregoing recitations of the record, it is difficult for this Court to understand how defendant could argue that there was no such diagnosis. This should have been a case that was remanded by stipulation.

The Court notes evidence available to the ALJ. Plaintiff testified at her hearing that she took unscheduled breaks at work (*see* Tr. 144). When asked how often this occurred, plaintiff explained that she had "kind of an open situation, where if I needed it, I could have it, and sometimes they would like send me on an errand, just so I could get out, and move around a little bit" (*id.*). Plaintiff testified specifically that her work study at school provided accommodations for her (Tr. 145). When asked for clarification on this issue at plaintiff's administrative hearing, plaintiff indicated that there were certain tasks

that she was supposed to do, but if she was not able to complete that task, then she could either take a break or they'd send her outside to do something else (*id.*).

Plaintiff also testified that she missed many days of attendance at school (Tr. 146). She indicated that she missed classes at least "a couple times a week" (*id.*). Because plaintiff was taking laboratory classes, she "could adjust those around [her] own schedule" (Tr. 147). Plaintiff additionally explained that she did not go to classes all of the time, and explained that she only was scheduled to be in class four days a week (Tr. 166). Plaintiff also testified that when she was in school she "had [her] couple weeks [of] breaks in between quarters, which you don't get at a regular job" (Tr. 166-67). Plaintiff testified that she had to make up course work on the weekends that she was unable to complete during the week (*see* Tr. 167).

Although defendant contends that plaintiff demonstrated that she suffered no limitations from her alleged mental impairments because she still excelled in her grades, the ALJ did not discuss transferability of these abilities to a competitive work setting and did not discuss how an employer would or would not allow an employee regularly to take unscheduled breaks and miss days of work, so long as the employee made up the difference with excellent performance achieved with extra hours of work during off times. If it is established that plaintiff could complete full time work, but would have to miss days of work and make up the time later, and take a few weeks off every few months or so, such limitations necessarily would need to be in plaintiff's residual functional capacity ("RFC"). As there is no accommodation in plaintiff's RFC for the accommodations she appears to have required to obtain her excellent grades, plaintiff's

excellent grades do not comprise adequate grounds to ignore her limitations resulting from her mental impairments.

Furthermore, a review of the new evidence provided to the Appeals Council (but not available to the ALJ) buttresses the conclusion that plaintiff suffered from more than minimal interference in her ability to conduct work-related activities as a result of her mental impairment.

The Court may review new evidence presented first to the Appeals Council when determining whether or not "in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error." *Taylor v. Comm'r of SSA*, 659 F.3d 1228, 1232 (9th Cir. 2011) (*citing Ramirez v. Shalala*, 8 F.3d 1449, 1451-54 (9th Cir. 1993)). The Ninth Circuit did not require a finding that plaintiff had good cause for failing to produce the new evidence earlier. *See Ramirez, supra*, 8 F.3d at 1451-54; *see also Taylor, supra*, 659 F.3d at 1232.

Recently, the Ninth Circuit held that "when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court *must* consider in determining whether [or not] the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1159-60 (9th Cir. 2012) (emphasis added); s*ee also Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993) ("[s]entence-six remands may be ordered in only two situations: where the Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented *before the agency*") (emphasis

added) (*citing* 42 U.S.C. § 405(g) (sentence six); *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

Some of the new evidence was lay evidence provided by Ms. Deann Woodruff, plaintiff's friend (*see* Tr. 320-28). She opined that "[w]hen [plaintiff] started school, she had no time or energy to do anything or go anywhere," and plaintiff "struggled with attending class [and] completing homework" (*see* Tr. 324). Ms. Woodruff noted her observation that "[t]his is when her house really went downhill to the point that no one could come over" (*id.*).

Mr. Dennis Hatch, plaintiff's supervisor for her work study program, also provided a lay statement comprising new evidence on May 6, 2010 (*see* Tr. 329). He indicated that he was plaintiff's supervisor from September, 2006 until August, 2009 (*see id.*). He indicated in his letter, in part, as follows:

> [Plaintiff] worked 15 hour (sic) a week while school was in session. I was able to accommodate her by providing flexible scheduling, flexible duties, and space when she was emotional from having low sugar episodes.
> Her tasks were such that they were a mix of sitting, standing, walking and reaching so she was not kept in one position for long periods.
> She was also off work between quarters, so she would have 1-3 weeks where she had no school or work and could rest.

(*id.*).

Finally, Professor Lance Wrzesinski provided insights gleaned from his time teaching plaintiff at Centralia College (*see* Tr. 330). His memo includes the following:

> [Plaintiff] tried her best to be timely and regular in her attendance and studies, though there were numerous occasions that her health or mental state did not always cooperate. Sometimes the struggle was simply getting to class or staying at school long enough to work her work-study

job. Even then her emotional state was such that the time was not always very productive.

We had numerous conversations about how to try to manage her emotions to prevent them from interfering with her school or job. Other times we had to just let them pass and learn how to work around them and with them. As instructors we recognized a need to provide some accommodations for [plaintiff] to help her reach some goals and objectives. The administration worked with her as well to customize some courses and program requirements.

[Plaintiff's] grades reflect the fact that she spent an extreme amount of time in excess of that required by most students to get through her studies. What they don't reflect are all the challenges, physically and emotionally, that had to be dealt with by her and those working with her.

(*id.*).

Here, Professor Wrzesinski's lay opinion demonstrates that plaintiff suffered from more than a minimal interference in the ability to conduct work-related activities as a result of her mental impairment(s) (*see id.*). Therefore, in addition to the fact that the evidence that was before the ALJ demonstrates that his decision was not based on substantial evidence in the record as a whole, the new evidence additionally demonstrates this conclusion.

The Court finds that the lay statements buttress the conclusion that the ALJ's decision is not based on substantial evidence in the record as a whole.

For the stated reasons and based on the relevant record, the Court concludes that the ALJ erred when making his step two determination that plaintiff did not suffer from any severe mental health impairment. The Court also concludes that this error is not harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Court noted multiple instances of the application of these principles. *Id.* (collecting cases). The court noted that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id.* (citations omitted). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "without regard to errors' that do not affect the parties' 'substantial rights." *Id.* at 1118 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

Here, the ALJ found that plaintiff did not suffer from any severe mental impairment and based this finding in part on an erroneous finding of a lack of a diagnosis of any mental impairment until 2010. The RFC evaluated for plaintiff by the ALJ therefore may not be valid, as plaintiff may require accommodation for mental limitations, such as a need for unscheduled breaks, clearly evidenced in the record, into her RFC. Plaintiff contends that the ALJ improperly failed to accommodate adequately

her limitations from fatigue, difficulty focusing, the need to take extra breaks, and limitations on attendance and endurance.

In addition, as a result of the ALJ's faulty step two finding, he relied on the Guidelines ("Grids") without the aid of a vocational expert when determining whether or not there were other jobs that plaintiff could perform, the determining finding leading to the ultimate conclusion of non-disability in this case (*see* Tr. 97). Likewise, this use of the Grids at step five, at which the burden of producing other jobs that plaintiff can perform shifts to the Acting Commissioner, may not be proper, based on plaintiff's mental impairments.

Therefore, this matter should be evaluated anew to determine the extent of limitation resulting from plaintiff's mental impairment of depression, and the aforesaid errors are not irrelevant to the ultimate disability determination.

In addition, the Court notes that the ALJ failed to follow the special procedure required for evaluating mental impairments.

The Social Security Regulations set forth a specific procedure for evaluating mental impairments. 20 C.F.R. § 404.1520a(a). This procedure applies "at each level in the administrative review process," including the ALJ's written decision issued after a hearing. *See id.* According to this procedure, the ALJ first must determine whether or not a medically-determinable mental impairment exists by evaluating the relevant symptoms, signs and laboratory findings. 20 C.F.R. § 404.1520a(b)(1); *see also* 20 C.F.R. §§ 404.1508, 404.1528. In a case where an Administrative Law Judge found that a claimant had a mental impairment, but that it was not severe, the Ninth Circuit concluded that the

ALJ committed legal error by not documenting application of the special procedure required for evaluating mental impairments. *Keyser v. Comm'r SSA*, 648 F.3d 721, 726 (9th Cir. 2011) ("the Social Security Regulations require the ALJ to complete a PRTF and append it to the decision, or to incorporate its mode of analysis into the ALJ's findings and conclusions"); *see also* 20 C.F.R. § 404.1520a.

Once it is determined that a mental impairment exists, the ALJ "must rate the degree of functional limitation resulting from the impairment(s)." 20 C.F.R. § 404.1520a(b)(2). The regulations require the ALJ to include specific findings as to the degree of functional limitation in activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The regulations require that the ALJ rate the degree of functional limitation in the four areas described above. *Id.* As quoted by the Ninth Circuit, the ALJ's written decision "*must* incorporate the pertinent findings and conclusions based on the technique," and "*must* include a specific finding as to the degree of limitation in each of the functional areas." *Keyser*, *supra*, 648 F.3d at 725 (*quoting* 20 C.F.R. § 404.1520a(e)(4)) (emphasis added by Ninth Circuit) (other citation omitted).

As indicated, the ALJ failed to document application of the special technique and failed to "include a specific finding as to the degree of limitation in each of the functional areas." *See id.* For this reason, as well as due to the ALJ's faulty step two determination, this matter should be reversed and remanded for further evaluation and review.

In addition, plaintiff complains that the ALJ failed to discuss the significant probative evidence of various doctors' evaluations. Despite the fact that significant

probative evidence must be discussed, defendant does not concede error requiring reversal.

The ALJ indicated that "the State agency review yielded insufficient evidence to evaluate the claimant's functionality prior to the date she was last insured" (Tr. 96 (*citing* Ex. 7E, 12F, 13F)). The ALJ further indicates that although "the representative has since submitted more evidence, that evidence does not justify more limitation than outlined above for the relevant period" (Tr. 96). That is the extent of the ALJ's evaluation of the various opinions from plaintiff's other doctors.

An ALJ may reject evidence from acceptable medical sources only "for specific and legitimate reasons that are supported by substantial evidence in the record." *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Based on a review of the relevant record, the Court concludes that the ALJ did not accomplish that task here, and hence, the medical evidence from plaintiff's examining, and non-examining sources, including the new evidence, as relevant to the appropriate period of time, must be evaluated fully following remand of this matter.

Plaintiff also complains about the ALJ's treatment of plaintiff's physical impairments, and the fact that much of the evidence regarding plaintiff's physical

impairments was not discussed by the ALJ. Remand of this matter will allow for a more complete analysis of all of the significant, probative evidence in the record.

**(2) Whether or not the ALJ properly evaluated plaintiff's testimony**.

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility should be assessed anew following remand of this matter.

**(3) Whether or not the ALJ properly evaluated the lay evidence**.

Similarly, the lay evidence should be evaluated fully following a proper review of the medical evidence, and following re-evaluation of plaintiff's credibility.

**(4) Whether or not the ALJ properly assessed plaintiff's residual functional capacity ("RFC") and (5) Whether or not the ALJ erred in basing his step five finding on the Medical-Vocational Guidelines and by failing to take testimony from a vocational expert**.

As much of the evidence must be evaluated anew, plaintiff's RFC must be assessed anew; as must, if necessary, the remaining steps of the sequential disability evaluation process.

**(6) Whether or not the new evidence that was submitted to the Appeals Council shows that the ALJ's decision was not supported by substantial evidence and/or based on legal error.**

Remand of this matter will allow for the full evaluation of the additional evidence submitted to the Appeals Council, as relevant to the appropriate period of time.

**(7) Whether this matter should be reversed and remanded with a direction to award benefits, or reversed and remanded for further administrative proceedings.**

Generally when the Social Security Administration does not determine a claimant's application properly, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292).

Here, outstanding issues must be resolved. *See Smolen, supra,* 80 F.3d at 1292. The vast majority of the evidence relevant to plaintiff's mental impairments has not been evaluated. In addition, the new evidence submitted for the first time to the Appeals Council warrants full review, and an additional administrative hearing is suggested.

Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

CONCLUSION

Based on the stated reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on January 24**,** 2014, as noted in the caption.

Dated this 9th day of January, 2014.

J. Richard Creatura
United States Magistrate Judge